NEW YORK METAL CEILING CO. v. CITY HOMES IMP. CO.

(Supreme Court, Appellate Term.    May 5, 1904.)

1. CONTRACTS—CONSTRUCTION—REQUIREMENTS.

Defendant, who was constructing a building, induced plaintiff to put up a sample ceiling on the eighth floor of the building, on an understanding that, if the ceiling should prove satisfactory, plaintiff would be given an order for the balance; plaintiff's proposal having specified the rate per square foot for putting up metal ceiling, and providing that the "spaces ceiled are to be measured from wall to wall and an allowance made for that portion of the side walls which is covered by metal cornice." The proposal was subsequently accepted. In an action for the price of the work, defendant set up a counterclaim on the ground that plaintiff had failed to put up a metal cornice on the eighth floor. It did not appear that, on all the floors except the eighth, metal cornices had been put up, nor was it shown that such cornices were essential or customary, nor did it appear that plaintiff had ever been requested or notified to put a cornice on the eighth floor; and a letter written by defendant previous to plaintiff's final estimate contained a clause, "where cornice is used extending down to the side walls," etc. *Held*, that the parties considered the eighth floor as completed when the estimate was signed, and plaintiff was under no obligation to place a cornice on such floor.

2. BUILDING CONTRACT—BREACH—AMOUNT OF DAMAGES—EVIDENCE.

Where, in an action against the owner of a building for the contract price of putting in ceiling work, there was a counterclaim on the ground that plaintiff had failed to put in a cornice as required on one floor of the building, testimony of defendant that about $50 would be the cost of putting in such a cornice, but that it was "pretty hard to figure out," did not amount to a sufficient basis for an allowance of $50 damages.

3. SAME—MEASURE OF DAMAGES.

Where, in an action for the contract price of putting in ceiling work in a building, there was a counterclaim on the ground that plaintiff had failed to put in a certain cornice, but it nowhere appeared that the premises were any less valuable by reason of the absence of the cornice, the measure of damages on the counterclaim was the difference between the amount which the defendant would have been obliged to pay plaintiff for the cornice, and the fair cost of putting it up under existing conditions.

Appeal from Municipal Court, Borough of Manhattan, Eighth District.

Action by the New York Metal Ceiling Company against the City Homes Improvement Company. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before FREEDMAN, P. J., and LEVENTRITT and GREENBAUM, JJ.

Cromwell G. Macy, for appellant.
McKelvey & Mattocks, for respondent.

FREEDMAN, P. J. This action was brought to recover the sum of $65, alleged to be due the plaintiff for work done and materials furnished in putting up metal ceiling in a building owned by the defendant. The material facts are as follows:

The defendant was engaged in erecting a large apartment house in this city, and desired to use the metal ceiling made and put up by the plaintiff, and solicited an estimate from it for such ceiling. Upon plaintiff making its offer, the defendant suggested that the plaintiff put up a sample ceiling upon the eighth floor of the building, and stated that if such ceiling, when put up, was satisfactory, it would give an order for "the balance," and, if not satisfactory, payment should be made for this work at the rate named in the furnished estimate. This ceiling was erected, and thereafter the written proposal submitted by plaintiff was accepted by defendant, which provided as follows:

"Dear Sir: At the rate of ten cents per square foot we propose to put up complete * * * metal ceilings in eight halls or arcades. * * * The spaces ceiled are to be measured from wall to wall and an allowance made for that portion of the side walls which is covered by a metal cornice."

It is not disputed that the plaintiff furnished and put up ceiling at the agreed rate to the amount of $915, and that there was a balance due to the plaintiff therefor of $65; but the defendant interposed a counterclaim for $50 damages for "breach of contract in failing to complete work, and in time agreed," which counterclaim was allowed by the court below. The basis of this counterclaim is that the plaintiff failed to put up a metal cornice upon the eighth floor; the plaintiff contending that, when the contract was finally executed between the parties, the eighth-floor ceiling had been completed, so far as the plaintiff was concerned, and the defendant contending that the plaintiff was obligated to put a cornice thereon.

The words in the contract, "and allowance made for that portion of the side walls which is covered by a metal cornice," were interpreted by the plaintiff's witnesses, without objection, to mean "that, where a metal cornice is to be put on, we are to be paid for it." It does not appear that, on all the floors except the eighth, metal cornices had been put up; nor was it shown that metal cornices were essential, or that it was customary to put up such cornices in connection with the ceiling on any floor. The president of the defendant testified in answer to the question: "How many floors was it agreed the cornices should be put on? Answer. I should say eight floors." It is not claimed or shown that the plaintiff was ever requested or notified to put a cornice

on the eighth floor, and this answer does not show any agreement to do so. Moreover, in the defendant's letter just previous to plaintiff's final accepted estimate, the defendant says, "Where cornice is used extending down to the side walls," etc., which would indicate that upon some of the floors the use of cornices was not contemplated. I think the facts disclosed show that the parties considered the eighth floor already completed when the estimate was signed, and that the reference contained in such estimate to the eighth floor was merely to include in such estimate the amount of ceiling already put up, for the purpose of computing its surface, and including it in the final amount to be paid by the defendant. The defendant also failed to sustain its counterclaim in another respect. There was no proper measure of damages shown. The only testimony given upon that subject was the testimony of one witness as follows:

"Q. What would it cost to put a cornice like the cornice on the other floors on the eighth floor at the present time? A. That is pretty hard to figure out. The ceiling would have to be ripped down. I should say about $50."

This could hardly form a proper basis for an allowance of $50 damages.

It is not disputed but that if the plaintiff had put up a cornice, as the defendant claims it should have done, the labor and material thereof would have had to be paid for by the defendant. It nowhere appears that the premises are of any less value by reason of the absence of the cornice; and, if it had been shown conclusively that the plaintiff had agreed to put up the cornice, the measure of damages would have been only the difference between the amount which the defendant would have been obliged to pay plaintiff for the cornice, and the fair cost to defendant of putting up the cornice under the existing conditions.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event. All concur.